# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                    **Case No. 3:17cr63/MCR**

**DARREN L. LEE.**

_____\

## <u>ORDER</u>

Defendant Darren L. Lee pled guilty to one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Lee's Presentence Investigation Report ("PSR") classified him as an armed career criminal and increased his base offense level from 24 to 30, pursuant to 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA"), and U.S.S.G. § 2K2.1, based on four prior convictions in the state of Florida: (1) one for possession with intent to sell or distribute cocaine; (2) one for aggravated battery of a pregnant woman; and (3) two for felony battery. The resulting Guidelines range was 180 months to 210 months.[1] Lee objected to the armed career criminal classification, arguing that his prior aggravated battery and felony battery convictions do not qualify as "violent felonies"

---

[1] Based on a total offense level of 30 and a criminal history category of VI, Lee's Guidelines range was 168 months to 210 months; however, the bottom end of the range became 180 months due to the statutory mandatory minimum. *See* U.S.S.G. § 5G1.1.

for purposes of the ACCA. At sentencing, the Court disagreed with Lee and applied the ACCA enhancement.[2] This Order memorializes and further explains that ruling.

## I. Legal Standard

Under the ACCA, a defendant who is convicted of being a felon in possession of a firearm is subject to a mandatory minimum sentence of 15 years (180 months) if he has three prior convictions for a "violent felony" or "serious drug offense." 18 U.S.C. § 924(e)(1). The parties agree that Lee's prior conviction for possession with intent to distribute cocaine qualifies as a serious drug offense for purposes of the ACCA. The only dispute is whether Lee's prior aggravated battery and felony battery convictions qualify as violent felonies. At least two of the convictions must qualify in order for Lee to have the three predicates necessary to support an ACCA-enhanced sentence.

The ACCA defines a "violent felony" as any crime punishable by imprisonment for a term exceeding one year that either: (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (2) is burglary, arson, extortion, or involves the use of explosives. 18 U.S.C. § 924(e)(2). The first prong of this definition is commonly referred to as the elements clause and the second prong as the enumerated clause.[3] *United States v.*

---

[2] Lee was sentenced to 180 months.

[3] In *Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Samuel Johnson*"), the Supreme Court struck down the ACCA's residual clause—which extended the definition of "violent felony"

*Fritts*, 841 F.3d 937, 939 (11th Cir. 2016). Neither aggravated battery nor felony battery is listed as an ACCA predicate under the enumerated clause. Therefore, Lee is only subject to the ACCA enhancement if these offenses, as defined by Florida law, fall within the elements clause.

To determine whether a prior conviction falls within the elements clause, sentencing courts generally employ a categorical approach, looking only to the statutory definition of the offense, without inquiring into the defendant's specific conduct in committing it. *See Mathis v. United States*, 136 S. Ct. 2243, 2251-52 (2016). Under this approach, courts must presume that the defendant's conviction "rested upon the least of the acts criminalized" by the statute and determine whether, in all instances, those acts involve the use, attempted use, or threatened use of physical force against another person. *United States v. Davis*, 875 F.3d 592, 597 (11th Cir. 2017). If so, then the offense categorically qualifies as an ACCA predicate and the inquiry ends there. *Id.* If not—that is, if the statute criminalizes conduct that does not involve physical force—then the offense cannot categorically qualify as an ACCA predicate, even if the particular facts underlying the defendant's own conviction might satisfy the definition. *Id.*

---

to "conduct that presents a serious potential risk of physical injury to another"—as unconstitutionally vague.

"In most cases, the categorical approach should be the beginning and end of the analysis." *United States v. Estrella*, 758 F.3d 1239, 1245 (11th Cir. 2014). However, in a "narrow range of cases" where the statute of conviction is divisible— that is, where it is "disjunctive[ly] phras[ed]" and lists multiple alternative elements of functionally separate crimes, as opposed to various factual means of committing the same element of a single crime—and at least one, but not all of the criminalized acts falls within the elements clause, sentencing courts employ a "modified categorical approach" to determine whether the statute qualifies as an ACCA predicate. *Mathis*, 136 S. Ct. at 2249, 2253; *see also Estrella*, 758 F.3d at 1245. The modified categorical approach allows courts to examine a limited class of documents, in addition to the statute and the fact of conviction, "to determine what crime, with what elements" formed the basis of the defendant's prior conviction. *Mathis*, 136 S. Ct. at 2245. These documents, known as *Shepard* materials, include the charging document, jury instructions, a written plea agreement, a transcript of a plea colloquy, and "any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). Importantly, the modified categorical approach retains the categorical approach's focus on the elements of the underlying crime, not the facts. *See Descamps v. United States*, 570 U.S. 254, 263 (2013). After identifying the statutory elements of the crime for which the defendant was convicted, courts must "decide whether the least of the acts

criminalized by that statutory phrase (instead of whether all of the acts criminalized by all of the statutory phrases) includes the use, attempted use, or threatened use of physical force against another person." *See Davis*, 875 F.3d at 598.

In ascertaining the scope of conduct criminalized by the elements of an offense, sentencing courts consider not only the statutory language, but also the interpretation given to that language by appropriate state appellate courts, which is binding. *See Davis*, 875 F.3d at 597; *see also United States v. Braun*, 801 F.3d 1301, 1303 (11th Cir. 2015) ("We are bound by federal law when we interpret terms in the ACCA, and we are bound by state law when we interpret the elements of state-law crimes."); *United States v. Rosales-Bruno*, 676 F.3d 1017, 1021 (11th Cir. 2012) ("[W]e look to [state] case law to determine whether a conviction under [a state statute] necessarily involves the employment of 'physical force' as that term is defined by federal law."). To find an offense overboard, there must be a "realistic probability, not a theoretical possibility" that the statute would be applied to conduct not encompassed by the elements clause of the ACCA. *See United States v. Dixon*, 874 F.3d 678, 681 (11th Cir. 2017) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

## II.  Analysis

Lee was previously convicted of aggravated battery, a second-degree felony, in violation of Fla. Stat. § 784.045(1)(b), which requires proof that a defendant: (1)

committed a simple battery; and (2) knew or should have known that the victim was pregnant at the time.[4]  *See Small v. State*, 899 So.2d 862, 863 (Fla. 1st DCA 2005). Lee also has two prior third-degree felony battery convictions under Fla. Stat. § 784.03(2), which requires proof that a defendant: (1) committed a simple battery; and (2) at the time, had one or more prior convictions for simple battery, aggravated battery, or felony battery.[5]  *See Osborn v. State*, 177 So.3d 1034, 1035 (Fla. 1st DCA 2015).  The substantive offense underlying both of these statutes is simple battery, which ordinarily is a first-degree misdemeanor in Florida, *see* Fla. Stat. § 784.03(1), but is elevated to a felony for a defendant who, like Lee, has been convicted of battery in the past or knew that the victim was pregnant at the time.  *See* Fla. Stat. §§ 784.03(2), 784.045(1)(b).  Thus, determining whether Lee's prior convictions qualify as "violent felonies" under the elements clause of the ACCA depends on whether simple battery, under Florida law, has as an element the use, attempted use,

---

[4] This offense differs from aggravated battery in violation of Fla. Stat. § 784.045(1)(a), which requires proof that a defendant, in committing simple battery, either: (1) intentionally or knowingly caused great bodily harm, permanent disability, or permanent disfigurement; or (2) used a deadly weapon.  In *Turner v. Warden, Coleman FCI (Medium)*, the Eleventh Circuit held that a conviction under Fla. Stat. § 784.045(1)(a) categorically qualifies as a "violent felony" under the elements clause of the ACCA.  709 F.3d 1328, 1341 (11th Cir. 2013), *abrogated on other grounds by Samuel Johnson*, 135 S.Ct. 2551.

[5] This offense differs from felony battery in violation of Fla. Stat. § 784.041(1), which is committed where a defendant: (1) actually and intentionally touches or strikes another person without consent; and (2) causes great bodily harm, permanent disability, or permanent disfigurement.  In *United States v. Vail-Bailon*, the Eleventh Circuit held that a conviction under Fla. Stat. § 784.041(1) categorically qualifies as a "crime of violence" under the elements clause of U.S.S.G. § 2L1.2.  868 F.3d 1293, 1295 (11th Cir. 2017).

or threatened use of physical force.  Physical force, in this context, means "*violent force—that is, force capable of causing pain or injury to another person.*"  *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Curtis Johnson*").

Under Florida law, simple battery occurs when a person either: (1) actually and intentionally touches or strikes another person without consent; or (2) intentionally causes bodily harm to another person.  Fla. Stat. § 784.03(1).  The Supreme Court has held that a Florida felony battery conviction predicated on the commission of simple battery does not categorically constitute a "violent felony" under the ACCA because the least of the acts criminalized by Florida's simple battery statute—*i.e.*, an actual and intentional touching—does not have as an element the use, attempted use, or threatened use of violent force.  *Curtis Johnson*, 559 U.S. at 138.  To the contrary, the simple battery statute encompasses "any intentional, physical contact, no matter how slight," and even "[t]he most nominal contact, such as a tap on the shoulder without consent, establishes a violation."  *See id*. (internal marks omitted).  Accordingly, pursuant to *Curtis Johnson*, the Court finds that Lee's prior aggravated battery and felony battery convictions, which are predicated on his commission of simple battery, do not categorically constitute violent felonies.

The Court next analyzes whether Florida's simple battery statute is divisible.  Importantly, the Supreme Court did not reach this question in *Curtis Johnson* because there were no available *Shepard* documents that would have permitted a

conclusion that the defendant's conviction rested on anything more than the least of the acts criminalized by the simple battery statute. *Curtis Johnson*, 559 U.S. at 136. In the Eleventh Circuit, it is well-established that Florida's simple battery statute "comprises multiple, alternative versions of [the] crime" of battery. *See United States v. Braun*, 801 F.3d 1301, 1305 (11th Cir. 2015); *Wilson v. Warden, FCC Coleman*, 581 F. App'x 750, 754 (11th Cir. 2014); *United States v. Diaz-Calderone*, 716 F.3d 1345 (11th Cir. 2013). Until recently, this meant that the statute was divisible and could be violated by a defendant in three different ways: (1) by actually and intentionally touching the victim; (2) by actually and intentionally striking the victim; or (3) by intentionally causing bodily harm to the victim. *See Braun*, 801 F.3d at 1305. In *Mathis v. United States*, 136 S. Ct. 2243 (2016), however, the Supreme Court clarified the meaning of the term divisible, as well as the analytical framework that sentencing courts must employ in assessing divisibility. To date, the Eleventh Circuit has not addressed the divisibility of Florida's simple battery statute in light of the principles espoused in *Mathis*.[6] In this case, the Government argues that the simple battery statute remains divisible after *Mathis*, but into two

---

[6] A three-judge panel did analyze this question in *United States v. Green*, 842 F.3d 1299 (11th Cir. 2016). However, the panel vacated its decision following the Eleventh Circuit's *en banc* decision in *United States v. Vail-Bailon*, 868 F.3d 1293 (11th Cir. 2017) and issued a superseding opinion that did not address the divisibility of Florida's simple battery statute. *See United States v. Green*, 873 F.3d 846 (11th Cir. 2017).

elementally distinct battery offenses, rather than three. For the following reasons, the Court agrees.

In *Mathis*, the Supreme Court explained that a statute is divisible where it lists multiple alternative elements, thereby creating multiple separate offenses in a divisible statutory structure. *Mathis*, 136 S. Ct. at 2249. In contrast, a statute is considered indivisible where its alternative phrasing "enumerates various factual means of" satisfying one or more of the statute's otherwise indivisible set of elements. *Id*. at 2256. Thus, the "threshold inquiry" for every divisibility determination is whether the state statute sets out alternative "elements" or "means." *Id*. Sentencing courts are instructed to discern "elements" from "means" by reference to: (1) the text of the state statute; (2) state appellate court decisions interpreting and applying the statute; and (3) where state law does not clearly resolve the question, the record of the prior conviction itself—including charging documents and jury instructions—which "can reveal, in some cases better than state law itself," the nature of an alternatively phrased statutory list. *Id*. at 2256-57.

The Court begins, as *Mathis* instructs, with the text of the Florida simple battery statute. Again, the statute defines two, separately numbered forms of battery: (1) actually and intentionally touching or striking another person; or (2) intentionally causing bodily harm.[7] *See* Fla. Stat. § 784.03(1)(a). These two statutory alternatives

---

[7] The Government concedes that "touch or strike" is indivisible.

criminalize different categories of conduct, separated by the word "or," which require different elements of proof. *See id*. Either alternative, standing alone, constitutes simple battery. *See id*. Thus, the text and structure of Florida's simple battery statute support a conclusion that the enumerated alternatives are functionally separate offenses, and not simply "factual means of committing a single element" of a single offense. *See Mathis*, 136 U.S. at 2249; *see also Castillo v. United States*, 530 U.S. 120, 124 (2000) (explaining that statutory "structure" informs the analysis of whether the statute defines separate crimes).

This reading of Florida's simple battery statute is consistent with Florida case law. The Florida Supreme Court has definitively stated that the statutory alternatives in Fla. Stat. § 784.03(1)(a) contain different "elements" that "describe two distinct levels of force," either of which, alone, constitutes the "complete" offense of simple battery. *State v. Hearns*, 961 So.2d 211, 214, 219 (Fla. 2007). Florida's intermediate appellate courts have also interpreted § 784.03(1)(a) as creating two distinct battery offenses. *See Byrd v. State*, 789 So.2d 1169, 1171 (Fla. 3d DCA 2001) ("There are two distinct definitions of the offense of battery."); *see also Nash v. State*, 766 So.2d 310 (Fla. 4th DCA 2000); *Hendricks v. State*, 744 So.2d 542 (Fla. 1st DCA 1999). And where "there are two distinct versions of [an] offense . . . the jury must unanimously find all the elements necessary for one or the other in order to convict the defendant." *See Miller v. State*, 123 So.3d 595, 598 (Fla. 2d DCA 2013) (holding

that a jury must unanimously agree on the alternative elements of aggravated battery under Fla. Stat. §§ 784.03(1) and 784.045(1)).  Given the bedrock principle that elements "are what the jury must find beyond a reasonable doubt to convict the defendant," *see Mathis*, 136 S. Ct. at 2248, this Florida case law provides strong evidence that the subsections of the simple battery statute are elements.

The conclusion that Florida's simple battery statute sets forth alternative elements finds further support in Florida Supreme Court decisions reviewing trial court jury instructions for error in battery cases.  Significantly, under Florida law, if an indictment charges a defendant with only one of the statutory alternatives (*e.g.*, touching or striking), it is error—albeit, usually of the harmless variety—for the trial court to also instruct the jury on the uncharged alternative (*e.g.*, causing bodily harm).[8]  *State v. Weaver*, 957 So.2d 586 (Fla. 2007); *see also Jaimes v. State*, 51 So.3d 445, 450-51 (Fla. 2010).  These decisions confirm that the statutory alternatives of "touch[ing] or strik[ing]" and "intentionally caus[ing] bodily harm" are alternative elements, each corresponding to a different crime of battery, which is why it is error to charge only one type of battery and instruct on the other.  *See Taylor*

---

[8] The error is considered harmless where the record shows that no argument has been made, and no evidence has been presented, on the uncharged version of battery.  *Weaver*, 957 So.2d at 588-89.  In that scenario, it is "assumed" that a jury's general verdict of guilty is "based not on elements that were never at issue, but on the elements on which the State based its arguments, and which the defendant contested at trial."  *Id.* at 589.  The error is fundamental, calling for reversal, where a jury returns a specific verdict that is explicitly based on the uncharged version of battery.  *Jaimes*, 51 So.3d at 451.

*v. State*, 760 So.2d 298, 299 (Fla. 4th DCA 2000) ("It is well established that a trial court commits fundamental error by convicting a defendant on a crime not charged [or] when it instructs the jury on an alternative theory which was not charged.").

Finally, Florida's Standard Jury Instructions for Criminal Cases support a conclusion that the simple battery statute creates two elementally distinct battery offenses. In *Mathis*, the Supreme Court explained that jury instructions "could indicate, by referencing one alternative term to the exclusion of all others, that [a] statute contains a list of elements, each one of which goes toward a separate crime." 136 S. Ct. at 2257. The Florida jury instruction for simple battery so indicates. It provides two different instructions, one for each of the separate battery offenses, and directs the trial court to give one or both instructions "as applicable." *See* Fla. Standard Jury Instructions in Criminal Cases, Battery, 8.3.[9] This instruction makes clear that a jury need only be instructed on, and unanimously find, one of the statutory alternatives in order to return a conviction for simple battery. Thus,

---

[9] The Florida jury instruction for simple battery states:

To prove the crime of Battery, the State must prove the following *element* beyond a reasonable doubt:

*Give 1 and/or 2 as applicable*.

1. [(Defendant) intentionally touched or struck (victim) against [his][her] will.]

2. [(Defendant) intentionally caused bodily harm to (victim).]

*In re Standard Jury Instructions in Criminal Cases—Report No. 2015-08*, 194 So.3d 1007 (Mem.) (Fla. 2016) (emphasis added).

Florida's jury instructions indicate that the simple battery statute contains alternative elements, each of which constitutes a separate and distinct battery offense.

Based on the foregoing, the Court finds that Florida's simple battery statute contains two alternative elements, thereby creating two separate battery offenses, in a divisible statutory structure: (1) touch or strike battery; and (2) bodily harm battery. *See Mathis*, 136 S. Ct. at 2249-50. Because the statute is divisible, the Court must apply the modified categorical approach and look beyond the statutory language to determine which alternative element formed the basis of Lee's prior convictions. If Lee was convicted under the first element (*i.e.*, touch or strike) then the inquiry ends and, pursuant to *Curtis Johnson*, Lee's prior convictions do not qualify as violent felonies under the ACCA. If Lee was convicted under the second element (*i.e.*, bodily harm), then the Court must analyze whether that element requires the use, attempted use, or threatened use of physical force. *See Davis*, 875 F.3d at 598.

A number of *Shepard* documents are available for Lee's prior Florida battery convictions, which the Court considers in turn.[10] With respect to Lee's aggravated battery conviction, the Government provided the information, judgment of conviction, and sentencing recommendation containing Lee's written plea agreement. *See* ECF No. 38-1. The information charged that Lee committed

---

[10] Because the Court finds that the *Shepard* documents for two of Lee's prior battery convictions—one for aggravated battery, one for felony battery—reflect bodily harm battery, Lee's third prior felony battery conviction is not addressed.

aggravated battery on a pregnant victim by "touching or striking" or by "intentionally causing bodily harm." *See id*. at 3. The judgment states that Lee was convicted of "aggravated battery by battery on pregnant person." *See id*. at 1. Because these documents do not specify which variant of simple battery formed the basis for Lee's conviction, they do not, standing alone, establish that his conviction "necessarily" involved the use, attempted use, or threatened use of physical force. *See United States v. Howard*, 742 F.3d 1334, 1345 (11th Cir. 2014). Significantly, however, the sentencing recommendation containing Lee's *nolo contendere* plea to the offense expressly incorporates, as the factual basis for the plea, an arrest report indicating that the victim, who was six months pregnant, was found "lying on the ground . . . vomiting" after Lee "beat her up" by pushing her down and repeatedly striking her. *See* ECF No. 38-1 at 8. These facts, which were "incorporate[ed] by reference" into the state court's sentencing order "and agreed to by" Lee, reflect that Lee was necessarily convicted on the basis of bodily harm battery on a pregnant person, since vomiting is certainly indicative of bodily harm. *See id*. at 4, 7.

The Court next considers Lee's felony battery conviction of December 11, 2015, for which the Government also provided the charging document, judgment of conviction, and sentencing recommendation containing Lee's written plea agreement. *See* ECF No. 38-3. These *Shepard* documents show that Lee was charged with, *inter alia*, felony battery "by actually and intentionally touching or

striking . . . or by intentionally causing bodily harm." *See id*. at 8. The sentencing recommendation, which was "agreed to by" Lee and incorporated by reference into the state court's judgment, incorporates the arrest report as the factual basis for Lee's conviction. *See id*. at 9-10. The incorporated arrest report reflects that Lee pulled the victim's hair, hit her repeatedly, and "pried open the side of her mouth," which caused bleeding and visible "cuts" and "tears" in the corners of her lips. *See id*. at 15. These facts, to which Lee expressly assented in the plea agreement, establish that Lee was necessarily convicted on the basis of bodily harm battery.

Lee asserts that the Court may not make any findings in this case based on the facts reflected in the arrest reports associated with his Florida battery convictions. More specifically, he argues that because he pleaded *nolo contendere* to the Florida offenses, instead of entering guilty pleas, he should be deemed to have admitted nothing, and the pleas deemed to have established nothing, about which variant of simple battery formed the basis of his convictions. The Court disagrees.

Ordinarily, police reports and arrest affidavits are not *Shepard*-approved documents and, thus, may not be used to determine whether a state court conviction qualifies as an ACCA predicate. *See United States v. Rosales-Bruno*, 676 F.3d at 1022-23. In this case, however, the Court is not relying on an arrest report in isolation. *See United States v. Diaz-Calderone*, 716 F.3d 1345, 1349-50 (11th Cir. 2013) (reviewing statements in a recording of a defendant's plea colloquy, together

with sworn police affidavits, to determine whether the "arrest affidavit established a factual basis" for his *nolo* plea). Instead, the Court is looking to the judicial records of Lee's two pleas—sentencing recommendations and signed, written plea agreements—that clearly state that the arrest reports served, with Lee's assent, as the factual basis for his *nolo* pleas.

In the federal sentencing context, prior convictions based on *nolo* pleas are treated the same as any other conviction. *See United States v. Drayton*, 113 F.3d 1191 (11th Cir. 1997) (a Florida *nolo* conviction constitutes a prior conviction for purposes of the ACCA); *see also United States v. Green*, 873 F.3d 846, 859-60 (11th Cir. 2017) (collecting cases). As with any other conviction, the *Shepard*-approved documents for ascertaining the statutory elements for which the defendant was convicted include the indictment or information, the "statement of factual basis for the charge . . . [as] shown by a transcript of plea colloquy or by written plea agreement presented to the [state] court," or by any record of comparable factual findings by the trial judge "to which the defendant assented." *Shepard*, 544 U.S. at 16, 20; *id.* at 25 ("[T]he only certainty of a generic finding lies in . . . the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea."); *see also Diaz-Calderone*, 716 F.3d at 1350-51 (relying on arrest affidavit where the defendant "assented to" the facts within during the *nolo* plea colloquy).

Under Florida law, the procedure for entering a *nolo* plea is the same as entering a guilty plea. *See* Fla. R. Crim. P. 3.172. Both require a factual basis, and before accepting either plea, "the trial court must receive in the record factual information to establish the offense to which the defendant has entered his plea." *Allen v. State*, 876 So.2d 737, 740 (Fla. 1st DCA 2004). Importantly, this factual information must establish "a prima facie showing of the essential elements of the crime charged." *Id.* Stated differently, the trial court must find, on the record, that the factual basis supports the guilty or *nolo* plea. *See Jones v. State*, 647 So.2d 182, 183 (Fla. 1st DCA 1994); *see also Koenig v. State*, 597 So.2d 256, 258 (Fla. 1992) ("Although [defense] counsel stipulated that there was a factual basis for the [no contest] plea, a stipulation with no factual basis in the record is insufficient."). A *nolo* plea "does not admit the allegations of the charge in a technical sense," *Vinson v. State*, 345 So.2d 711, 715 (Fla. 1977), however, once "accepted by the court, it becomes an implied confession of guilt and . . . admits for the purposes of the case all facts which are well pleaded," *Peel v. State*, 150 So.2d 281, 291-92 (Fla. 2d DCA 1963). *See also Beverly v. State*, 322 So.2d 597, 598 (Fla. 1st DCA 1975).

In this case, Lee, and also his state court attorneys, signed sentencing recommendations containing his *nolo* plea agreements with respect to the above-described Florida battery offenses. *See* ECF Nos. 38-1 at 4-7, 38-3 at 9-13. Each agreement expressly provided that the arrest report "which is part of the court record

filed with the clerk of the court is hereby incorporated by reference and agreed to by the defendant as a factual basis for this plea." *See* ECF Nos. 38-1 at 7, 38-3 at 9. If Lee disagreed with the factual bases contained in the arrest reports, he had the option of having a different factual basis written into blank lines provided on the form rather than agreeing to incorporate the arrest report. *See id.* Lee did not do so in either of his state court cases. Instead, he, and his attorneys, signed the agreements expressly indicating their assent to the incorporation of the arrest reports as the factual basis for his *nolo* pleas. *See* ECF Nos. 38-3 at 7, 38-3 at 13. In signing the agreements, Lee also expressly acknowledged that he understood "that the sentencing [c]ourt is incorporating by reference this complete sentencing recommendation as part of the judgment imposed by the [c]ourt." *See* ECF No. 38-3 at 10 (felony battery conviction).[11] Lee also agreed that he had "read" and "underst[ood]" the contents of the agreement and that he had "discussed with [his] attorney all of the ramifications or consequences of entering a plea of . . . nolo contendere to [the] charges." *See* ECF Nos. 38-1 at 7, 38-3 at 13. Based on these signed plea agreements, which were expressly incorporated into the official judgments of the trial court, the Court concludes that Lee explicitly assented to the factual basis in the sentencing recommendations, which expressly incorporated the arrest reports, rendering them

---

[11] The corresponding language in the agreement for Lee's aggravated battery conviction reads, "I understand . . . that the sentencing court is incorporating by reference this complete plea agreement as part of the sentencing order imposed by the court." *See* ECF No. 38-1 at 4.

judicially noticeable for purposes of applying the modified categorical approach.
*See Shepard*, 544 U.S. at 20 (stating that the elements of the offense of conviction
may be identified from "recorded judicial acts of" the state trial court). As the Court
has already found, both factual bases establish that Lee was necessarily convicted
on the basis of bodily harm battery.[12]

Because the *Shepard* documents establish that two of Lee's prior convictions
were for bodily harm battery, the Court must now determine whether bodily harm
battery has as an element the use, attempted use, or threatened use of physical force.
*See Davis*, 875 F.3d at 598. Again, in this context, physical force means "*violent*
force—that is, force capable of causing physical pain or injury to another person."
*Curtis Johnson*, 559 U.S. at 140.

To prove bodily harm battery, the prosecution must establish two elements:
(1) the defendant caused bodily harm to another person; and (2) he did so
intentionally. *See* Fla. Stat. § 784.03(1)(a)(2). As an initial matter, the Court
observes that Lee does not dispute that the term "bodily harm" refers to "physical
pain or injury" as those terms are used in the *Curtis Johnson* definition of "violent

---

[12] The fact that the *Shepard* materials would also support a conviction for "touch or strike" battery does not disqualify Lee's convictions from serving as ACCA predicates. As the Government notes, "[i]t is often [the] case that the same criminal act can violate a divisible statute in multiple ways." *See* ECF No. 43 at 1. In that scenario, the Eleventh Circuit has explicitly instructed that a state "court finding that the offense was committed violently is not needed where the *Shepard* materials enable the district court to make [such a] finding." *Diaz-Calderone*, 716 F.3d at 1350-51.

force."  Nevertheless, a brief discussion of the meaning of "bodily harm" is necessary to properly understand why "bodily harm battery" qualifies as a "violent felony."

The term "bodily harm" is not statutorily defined, but its meaning is readily discernible from Florida jurisprudence.  It is broadly understood in Florida criminal law that a battery can inflict two degrees of physical harm on a victim:  great bodily harm or bodily harm.  Great bodily harm—which includes only serious physical injury, permanent disability, or permanent disfigurement—is criminalized as either felony battery under Fla. Stat. § 784.041, or aggravated  battery under Fla. Stat. § 784.045.  *See, e.g.*, *Heck v. State*, 774 So.2d 844, 845-46 (Fla. 4th DCA 2000) (orbital fracture, swelling, and bruising constitutes great bodily harm); *Cooley v. State*, 686 So.2d 732 (Fla. 2d DCA 1997) (facial fracture requiring surgery constitutes great bodily harm); *Coronado v. State*, 654 So.2d 1267, 1270 (Fla. 2d DCA 1995) (facial fracture, numbness, and "a great deal of pain" around the eye constitutes great bodily harm).  In contrast, bodily harm, as may be caused by a simple battery, is broadly defined to encompass any "slight, trivial, minor, or moderate harm" to a victim.  *See Brown v. State*, 86 So.3d 569, 571-72 (Fla. 5th DCA 2012); *J.L. v. State*, 60 So.3d 461 (Fla. 1st DCA 2011).  As a result, Florida courts apply the term "bodily harm" to a wide range of physical infirmities.  *See, e.g.*, *Nguyen v. State*, 858 So.2d 1259, 1260 (Fla. 1st DCA 2003) (pain and burn

marks caused by stun gun, where victim required no medical treatment and suffered no lasting effects); *Gordon v. State*, 126 So.3d 292, 295-96 (Fla. 3d DCA 2011) (bruises that healed without medical treatment and left no scarring or other lasting effects); *C.A.C. v. State*, 771 So.2d 1261, 1262 (Fla. 2d DCA 2000) (scratches, swelling and puncture marks for which victim did not receive medical treatment). In short, the defining characteristic of "bodily harm" under Florida law is the presence of "some" sort of physical pain or injury to the body. *C.A.C.*, 771 So.2d at 1262. It follows that in order to commit "bodily harm battery" in Florida, a defendant must intentionally inflict physical pain or injury on another person. Because "it is impossible to cause bodily injury without using force 'capable of' producing that result," bodily harm battery necessarily has as an element the use or attempted use of force capable of causing physical pain or injury. *See Castleman*, 134 S. Ct. at 1416 (Scalia, J., concurring); *see also Vail-Bailon*, 868 F.3d at 1302 ("Force that *actually* causes injury necessarily was capable of causing that injury and thus satisfies the federal definition.").

The fact that bodily harm battery often involves the infliction of relatively minor injuries, such as bruises and abrasions, does not compel a contrary conclusion. The Supreme Court has explained that violent force "might consist . . . of only that degree of force necessary to inflict pain—a slap in the face, for example." *Curtis Johnson*, 559 U.S. at 143. Any number of physical acts are capable of causing

physical pain, including "hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling." *Castleman*, 134 S. Ct. at 1416 (Scalia, J., concurring). Such acts qualify as violent force in the sense that they have the capacity to inflict physical pain, if not concrete physical injury, on the victim. *See id*.; *see also United States v. Jennings*, 860 F.3d 450, 457 (7th Cir. 2017). To require that force be of such a degree as to cause much more serious injuries in order to qualify as violent would set the bar higher than *Curtis Johnson* itself does. Importantly, *Curtis Johnson* does not define "violent force" in terms of the severity of physical pain or injury inflicted. *See* 559 U.S. at 140. Instead, any force sufficient to cause physical pain or injury qualifies as violent force. *See id*. Because a conviction for Florida bodily harm battery requires proof that a defendant actually caused physical pain or injury, the offense has an element the use of violent force within the meaning of *Curtis Johnson*.

Lee argues that bodily harm battery does not qualify as a "violent felony" because "there are numerous ways to cause [bodily harm] without using physical force (much less violent force)." *See* ECF No. 37 at 2. Presumably, Lee is referring to the more subtle or indirect means of causing bodily harm, such as tricking a person into consuming poison, tampering with the brakes of a car, or setting a trap. In such scenarios, the argument necessarily goes, the ultimate injury to the victim may involve violent force of some sort, but the offense itself would not require the direct

use, attempted use, or threatened use of physical force by the offender. This argument fails.

"When a statute requires the use of force capable of causing physical pain or injury to another person, whether that force occurs indirectly, rather than directly (as with a kick or punch), does not matter." *United States v. Deshazior*, 882 F.3d 1352, 1357 (11th Cir. 2018) (quoting *United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014)). A defendant uses physical force whenever his volitional act sets into motion a series of events that result in the application of "force capable of causing physical pain or injury to another person." *See id*.; *see also United States v. Verwiebe*, 874 F.3d 258, 262 (6th Cir. 2017). Thus, in the case of poison, for example, the "use of force" is "not the act of sprinkling the poison; it is the act of employing poison knowingly as a device to cause physical harm." *Castleman*, 134 S. Ct. at 1415. Almost every circuit—including the Eleventh Circuit—that has considered this issue has held that the intentional use of indirect force against another person constitutes an application of "physical force" as contemplated by the Guidelines and the ACCA. *See, e.g., Deshazior*, 882 F.3d at 1357; *United States v. Ontiveros*, 875 F.3d 533, 537-38 (10th Cir. 2017) (ACCA); *United States v. Calvillo-Palacios*, 860 F.3d 1285, 1291 (9th Cir. 2017) (U.S.S.G. § 2L1.2); *United States v. Rice*, 813 F.3d 704, 706 (8th Cir. 2016) (U.S.S.G. § 4B1.2); *United States v. Jennings*, 860 F.3d 450, 459-60 (7th Cir. 2017) (ACCA); *Verwiebe*, 874 F.3d at 261 (U.S.S.G. § 4B1.2); *United*

*States v. Reid*, 861 F.3d 523, 529 (4th Cir. 2017) (ACCA); *United States v. Chapman*, 866 F.3d 129, 133 (3d Cir. 2017) (U.S.S.G. § 4B1.2); *United States v. Hill*, 832 F.3d 135, 144 (2d Cir. 2016) (ACCA); *United States v. Ellison*, 866 F.3d 32, 37-38 (1st Cir. 2017) (U.S.S.G. § 4B1.2). *But see United States v. Rico-Mejia*, 859 F.3d 318, 322-23 (5th Cir. 2017) (U.S.S.G. § 2L1.2).

It may be possible to dream up creative and unusual hypotheticals in which a non-violent act could result in "bodily harm" under Florida law. However, the Supreme Court has admonished against allowing our "legal imagination[s]" to roam freely in postulating the types of conduct that theoretically might be prosecuted under a state statute. *See Gonzales*, 549 U.S. at 193; *see also Deshazior*, 882 F.3d at 1357 (stating that courts must "resist in engaging in 'florid exercises of legal imagination' which 'pose highly improbable ways' of violating [a] statute") (quoting *Vail-Bailon*, 868 F.3d at 1307). Instead, sentencing courts must find that there is a "realistic probability, not a theoretical possibility" that a state would apply its statute to conduct that does not involve physical force. *See Gonzales*, 549 U.S. at 193. This requires a defendant, at the very least, to point to cases in which the state courts "did *in fact*" apply the statute to non-violent acts. *See id*. (emphasis added). Here, Lee has not identified, and the Court has not found, any Florida case supporting his theory that non-violent acts have been, or would be, prosecuted as bodily harm

battery in Florida.[13]  Thus, the Court concludes that there is no realistic probability that a defendant could be convicted of bodily harm battery, in violation of Fla. Stat. § 784.03(2), without having used, attempted to use, or threatened to use physical force.  Accordingly, the Court finds that Florida's bodily harm battery statute categorically requires the use of physical force and, therefore, when charged as a felony, qualifies as a "violent felony" under the elements clause of the ACCA.

Based on the foregoing, the Court finds that Lee's prior aggravated battery conviction, and his felony battery conviction dated December 11, 2015, which are predicated on violations of Florida's bodily harm battery statute, are violent felonies under the elements clause of the ACCA.  Having three qualifying prior convictions—two violent felonies, one serious drug offense—Lee is properly classified as an armed career criminal for sentencing purposes.  Accordingly, Lee's objection to the armed career criminal classification is overruled.

**DONE** and **ORDERED**, on this 25th day of April, 2018.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[13] One possible explanation is that other Florida statutes cover many such scenarios.  *See* Fla. Stat. §§ 859.01 (poisoning food or water); 860.17 (tampering with motor vehicles); 825.102 (neglect of elderly persons or disabled adults, such as withholding food and medicine); 827.03 (neglect of child, such as withholding food and medicine).